Yes, good morning and may it please the court, Judith Hadley from the Department of Justice representing the United States in this case. For over 60 years, the law has been settled that to be an educational organization within the meaning of Section 170B1A2 of the Internal Revenue Code, the organization's primary function must be providing education. It has never been enough for the organization to merely operate a school as one of its incidental operations. The schools must be the organization's primary function. Counsel, why did this issue with the Mayo organization not arise until 2005? Well, the law was settled. I think the best I can tell from the case law, this is the first organization that was not primarily engaged in formal instruction to claim. Why did your client come after Mayo sooner? I don't know. I know Mayo constantly is reorganizing itself. I don't know the history of the organization. Is there any evidence in the record whether a prior organization, the way it was previously reorganized, did not run afoul of this reg? I mean, there's some sort of agreement that the merger that's talked about briefly in 2010 didn't affect this issue. So what happened back in 2000 or 1995 or 1985 or any of the 60 years you're talking about? Mayo has had a number of reorganizations over the years. I think the one prior to 2010 was in 1999. What is in the record is the fact that the IRS audited Mayo's claim that it was an educational organization for purposes of 514, which is the exemption to the unrelated business income tax, the 2005 and 2006 tax years. Wait a minute. I understand you to say we can't learn from the prior Mayo case from the Supreme Court, where, as you know, I spent a great deal of time tracking why it took from the 1930s when the Social Security Act was formed until the 21st century for that $5 billion issue to arise. And there was a clear answer. And it made a big difference. You're telling me that all we get in the record here is a bunch of textual arguments by lawyers. Well, we are applying the text. We're applying the text of Section 514. Don't go into the text. I'm not done yet. Because I want to know whether 514 is all or nothing. If Mayo is 49% an educational organization, does it get no tax advantage? That's correct. It needs to be the primary function. The 49%, which I realize is a hypothetical. I don't understand the tax break. It is so badly described in these briefs. That's all I've done. I haven't dug into the record. But I don't understand 514. It talks about real property for the most part. And then in the briefs, you all talk about Mayo's parent being the investment coordinator for all of the functions that it does, which makes it sound like we're talking about personal property. Oh, it's the 514, the tax that is at issue here applies to debt finance investments in real property, not personal property. The whole $11 million is related to real property. It's related to real property that's an income that's unrelated to Mayo's charitable activities. Okay. So why is it relevant that one of the reasons it's not the primary function is that Mayo does all the securities investments for its entities? Why is that relevant? It's relevant because the exemption in 514 is a very narrow one. All tax exempt organizations must pay this tax on debt finance, real property investment income, except for four narrow categories. Two, retirement accounts, title holding companies, and educational organizations within the meaning of section 170B1A2 of the code. At the time that that limited exemption was enacted in 1984, educational organization had a very well-established meaning. For decades, it was understood that it's limited to organizations that are primarily engaged in providing formal instruction and otherwise satisfy the faculty curriculum student place requirements of section 170B1A2. Treasury issued regulations back in the 50s. Congress never altered those regulations even when asked to do so by interests that were lobbying against it. And in the years, Congress has cited those regulations in internal congressional committee reports to explain the operation of education. When was 514 enacted? I'm not sure when 514 was enacted. I know the exemption issue here was enacted in 1984. That was the 170, I thought. It was 1984. No, no. 170 was enacted in 1954. I'm sorry, 170B1A2. Yes, 170 was enacted in 1954. At that time, it had 170B1A provides an exception to the general rule at the time setting a cap for how much individuals can deduct their charitable contributions. It was originally set at 10% or 20%. And in 1954, Congress, for a few organizations at the time, it was usually churches, schools, and hospitals. Wait, when did it get linked to the tax consequences for the institution as opposed to charitable contributors? That's what 512 and 514 do, right? That is correct. When did that happen? Well, in 1984 is when 514 was providing the exemption for organizations. And the organization that Congress chose to provide this exemption to was the organization described in section 170B1A2. And in this case, as we pointed out in our brief, if Mayo's schools had been separately incorporated as their own organization, there's no question that that organization would be an educational organization within the meaning of section 170B1A2. And its real estate investments would be exempt from the UBIT tax. But what Mayo did is it's trying to use this very limited tax exemption to exempt all of its income from debt, finance, real property, the entire organization. And that organization qualifies as an exempt or within the meaning of section 514 and 170B1A2. And it does not because its primary function is not providing formal education and instruction. It's being the parent of a massive healthcare system. And we've laid out all of its activities. We've summarized at the beginning of the brief that it's providing human resources. It's providing legal compliance. It's providing system-wide financing and planning. It's doing the fundraising. And one of its functions is an incidental function is also operating the schools. But the exemption doesn't apply to... I think you've told me it is all or nothing. All or nothing in the sense that you have... The way your client is applying 514C9, whatever it is, is all or nothing. Well, you have to be an educational organization in and of itself. Yes. How do we find out how IRS defines principal and incidental? I'm sorry? I'm sorry. Could you repeat that? Well, the key words in the regulations, you know, our deference is gone now. So we have to... You cite Kaiser, so I'm sure you know that. And gone is an exaggeration, but not much. So now how do we find out whether... How the IRS is applying the word principal? Does it mean 51% or does it mean 83% or what? And how are they defining incidental? Because the reasonableness of that is now for judicial review, right? The meaning of primary is the district court held. Yes. And it just means it's going to be your lead activity. I'm not aware of any set percentage. It will just have to be your lead activity. And all your other activities can only be incidental to that, meaning they cannot be primary. Who decides that? It's a fact-based... What level of IRS bureaucracy is the decision made? That's not primary. Well, it'd be a fact-based test. It's first done by whoever's auditing the taxpayer. And then they have to... Then who has the burden of proof to disprove the reasonableness of the IRS determination? Well, as with all tax cases, particularly when you have a tax exemption, it's on the taxpayer to demonstrate that it's actually entitled to the exemption that Congress has provided in the code. Congress knows how to provide an exemption for organizations that operate the school as one of its activities, but not its primary activity. It's done this in a number of the excise tax exemptions that we've cited on page 47 of our brief. It did not do that in section 5149C9C. It limited the exemption there to educational organizations described in 170B1A2. It didn't provide the broader exemption that you see in sections like 4041 and 4221, which provide an exemption for both educational organizations described in section 170, as well as schools operated as an activity by any tax-exempt organization that can satisfy the faculty curriculum student place requirements. Ms. Hagley, how do you respond to the Rosello analysis that the district court seemed to rely on? Well, we really have two responses to that. Number one, it is just a single canon and it cannot be applied mechanically as the district court did here. This court made that point in the Union Pacific case, where it rejected the government's request to apply the Rosello principle. The court recognized if you looked in that case just at the text narrowly, it appeared to apply, but then the court looked broader at the context of the language and said that it did not. And it buys this is a principle that can't be applied mechanically. And the key context here, of course, the district court did not look at was the qualifier educational in section 170B1A2, as well as the long-held undisturbed interpretation of that term by Treasury. The second point that we make is that the presumption grows weaker when the language changes. And this is not a case like the court's chestnut decision, where it was comparing the word notice with the word written notice and refused to interpret the word notice to have a written requirement, because that was the only difference between those two phrases. Here, it's educational organization versus organization that has particular principle purpose. You know, there are different ways to demonstrate primacy of activity without using principle purpose phrase. In Mayo, this court and the Supreme Court recognized that a student should primarily be engaged in educational activities, even though that phrase was not in the statute. This court in the Lutheran social services interpreting the word church is used in section 6033 of the code, which provides an exemption to the filing requirement for churches, so that the church organization did not qualify for that exemption because the organization's primary activities were not religious. You know, that same term is used in the first Romanette of section 170B1A2, and Mayo has not explained why it would be okay to have a primacy requirement for Romanette 1 and not for Romanette 2. You have about a minute and a half left for rebuttal. Would you like to reserve it? I would like to reserve it. Thank you. All right. Thank you, Ms. Haglund. Ms. Hanning? Thank you, your honors. May it please the court. In this case, the USA's argument that Mayo Clinic cannot be an educational organization as defined by 26 USC section 170A1B2, which for the sake of my mouth and your ears, I'm going to call Romanette 2 for the rest of the argument, if you don't mind, requires them to show at least two things. First, that there is an implicit primary purpose requirement embedded in the statutory phrase educational organization, and second, that Mayo cannot meet that requirement because its principal purpose as a hospital is necessarily healthcare and not education. Both those arguments are proven wrong by the very next subsection of the statute, Romanette 3. Romanette 3 both provides an explicit primary purpose requirement showing that Congress was fully aware of how to add such a thing when it believed that a hospital's principal purpose could be medical education. That's because Romanette 3 exempts donations to organizations whose, quote, principal purpose or function, end quote, is, among other things, and I'm quoting here, medical education, and that only applies, quote, if the organization is a hospital, end quote, or a hospital's affiliated research organization. Thus, necessarily, Congress has contemplated that a hospital could have a primary purpose of medical education, and medical education is a form of education. The USA doesn't argue otherwise, and the USA has conceded that Mayo meets Romanette 2's faculty curriculum students place requirements. So the fact that medical education can be a hospital's primary purpose, according to Congress, really is case dispositive here, even if you accept the government's primary purpose argument with respect to medical education, or I'm sorry, educational organization. The USA tries to get around this reality through a series of mental gymnastics, but what gets lost in those arguments is the actual text of section 170. Excuse me, I apologize. First, I'd like to walk through why the plain language of the statute supports Mayo's three fund requests, and then discuss why the USA's arguments to the contrary are unavailing. So starting with the statute, the UBIT statute in the relevant portion, the relevant exemption, exempts organizations as in Romanette 2, that is educational organizations which regularly maintain a faculty and curriculum, and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on. Again, because the USA has conceded that we meet the faculty curriculum students place requirements, the only way that there's any room for argument in this case is if the term educational organization in and of itself implicitly contains a primary purpose requirement, and it doesn't for a few reasons. One, Mayo argued previously before the district court that the term which in the statute is actually definitional. Which can introduce a definitional clause, and if the faculty students curriculum place requirements are definitional, then there's no more to do. Counsel, it doesn't have to be read definitionally, it could be limitation. Correct. While I got your attention, why doesn't it make sense to have the type of limitation the government wants to impose here, where you could have a gaming of the tax system to have an organization that is largely not an educational institution, hire a few teachers and get a few students that may be one or two percent of what it actually does, and then they say we're an educational institution, so you can't tax our business income. I've got a couple of answers to that. The first, and I think most substantive, is that I think a couple of premises get shifted in the government's point that out to the court. Mayo is not arguing that you can be incidentally an educational organization and qualify to be an educational organization. In other words, if your purpose is only incidentally educational, we agree that then you are not- How do you determine whether it's only incidental? Kind of a requirement of primacy. That brings me to the second part of my question, and the district court's answer as well, which is the faculty curriculum students place requirements. Those requirements are designed to make sure that you can't just call yourself educational without being educational. Now, the district court ruled that there might be some room for regulation among what some of those terms mean in the faculty curriculum students place requirements, so if it's not considered definitional, maybe you could talk about what exactly is faculty? What exactly is regular? About normal. What does normally mean? Right. You could regulate around that, but in this case, that's not an issue because they have conceded that Mayo meets all of those things. Really, the only issue in this case is, is it the phrase educational organization that requires that you be at least 51%, as Judge Loken was questioning about, or however you define it, educational? Our answer is no. The statute said you have to look at the whole subsection, and it says educational organization, which, which, as you pointed out, Judge Smith, is either a definition or a narrowing term. So, which at least narrows educational organization. So, educational organization, at minimum, is those that meet those requirements plus, right, if it's not a definition. It's either just the things that meet those requirements, or the things that meet those requirements plus a few. But here, again, either way, Mayo qualifies because it's been conceded that we meet the faculty curriculum students place requirements. And the USA's argument to the contrary is essentially a dictionary definition of a different phrase in Black's Law Dictionary, educational institution. I would point out that just yesterday in preparation for the argument, I went on Black's Law Dictionary on Westlaw, and I believe it's the 2019 version, which is cited, but because it's on Westlaw, I'm not 100% positive. But anyway, the version on Westlaw, when you pull it up today, of that institution actually says school, college, university, or other educational facility. So, even that definition, in my view, isn't particularly helpful to them. It's not helpful at all, in my view. And even the USA itself couldn't agree, among itself, why the term educational organization is so limited here. Because below, the focus was on the word organization. And the argument was, if you read the summary judgment briefing below, the USA's argument was organization has to have one primary purpose. It has to have one overarching purpose by nature of being an organization. And perhaps realizing some of the, pragmatic difficulties with that argument here, the government has focused more on the adjective noun construction. And again, that argument is the one that I think depends on shifting premises. It starts with the idea that you can't be just incidentally educational and call yourself an educational organization. That's not something that we would dispute, honestly. If you happen to have a certain class that someone says meets the faculty curriculum students place requirements, but it happens once a year with your faculty, that seems incredibly unlikely to me. But even if it were true, then maybe the USA might have an argument there. Maybe. I don't think that could possibly be true, given the way the statute's constructed. But that's not the situation here. Because what the USA is doing here is taking that one step further and arguing that the, basically, it's all or nothing as Judge Locum- Counsel, wouldn't that be an issue perhaps for, to go back to the district court for fact finding? I don't think so, your honor. And the reason is a couple fold. First of all, the USA never argued below that if primary is read to be somehow substantial, as we have argued, if you choose to harmonize the regulation, as opposed to say that it conflicts with the statute, we said, well, then primary must mean some form of substantial. And we cited the Supreme Court's Agnew case in support of that proposition. We raised that below and the government offered no response to that in reply, never argued that we wouldn't meet the substantial requirement. And in fact, just continued pressing, no, it has to be primary. It has to be, you know, essentially the sole purpose is how they argued it below. And here you guys are healthcare and you can't argue that you're that. And look, the facts are undisputed that show that Mayo is an educational organization. We have one of the, I think the top, largest residency program by number of specialties. We're in the top five by number of residents. There's a graduate school. There's a medical college. The continuing school of education, one of the refund years educated a hundred thousand, over a hundred thousand individuals. You cannot look at this factual record and say that- Does the factual record present a figure as to what percentage of Mayo's overall activities are educational? So that's, to me, that brings us to another substantive problem with this primary requirement. Okay. Because the government- Can you answer the question? Please answer the question first. I would say nearly a hundred, but it's a bit subjective. The question was, what does the record tell us? And the record shows expenditures and it's, I don't think the record definitively shows what all of those expenditures are for. However, based on expenditures, what's shown? And this is the point that I'm trying to make, and I'm sorry if it seems non-responsive, but I'm genuinely trying to respond to your question. So medical education requires patient care. So you can't just look at what bucket it's put into on, say, for example, a tax return, which is literally the only thing that the government relied on below, and say, oh, well then that's not for education. So patient care, we would say, is an educational expense. It would cost less to treat these patients if we weren't providing education and the patient treatment as, for example, the Minnesota Supreme Court has acknowledged, this court has acknowledged, is integral to our medical education. So we would say patient care expenses are medical education expenses, and that was never really disputed below. So I'm trying to answer your question, but I'm trying to answer it fairly, which is, for example, on the tax form, there's a line item for support services, right? Those support services include things like the buildings that we pay for, and we pay faculty salaries. There's a lot of things that we would say are all educational. We would say our research is educational for those PhD students and the residents and things like that. So there's record evidence of some expenses. It's a little unclear on exactly which goes into which bucket, and even if it were crystal clear, we say 100% of that, most, a lot of it anyway, is for education. I don't have a precise number for you, but all of those things go toward education, and that brings me to the problem of particularly in the educational context, talking about a primary purpose, because think of universities, right? Universities have a substantial research function, and the United States here has taken the position that research wouldn't count toward educational. My alma mater, perfect example. I went to the University of Illinois. There is an experimental cornfield in the middle of the university that's 100 years old. As part of their land grant status, they felt it was critical to the university, so critical that they built the undergraduate library underground so that it didn't throw shade on that cornfield and experimental research cornfield. And so you could look at that and say, well, the University of Illinois' priority clearly is research and not formal instruction. This is going to create a real problem for all kinds of institutions that even the IRS would acknowledge in its own regulation fall under, were intended to fall under the regulation. Is this issue before a circuit court as a matter of first impression? I would say no, because this court has already... Well, okay, this particular interpretation I think is, I think if you look at the dicta in particularly this court's FICA case, it's very clear that Mayo has an educational purpose. This court has already ruled that. So I guess the direct legal issue, to my knowledge, is an issue of first impression, but I think everything you need has been decided, which is, first of all, the USA has conceded that we need faculty curriculum students place, and second of all, the factual record in this court's prior ruling make very clear that Mayo has an educational organization. One final thing I'd like to point out in response to the government's argument, the government has pointed to sort of the corporate form of Mayo as somehow being dispositive here. First of all, that ignores all of our education, but second of all, it's not an argument that was made below. I encourage you to read the briefs because that was not the focus of the USA's argument below. They were not saying below that it's just how you're organized and that's why you're not educational. The clear thrust of their argument below was that Mayo is not primarily educational because it's focused on healthcare. And so I would just ask the court to review that. But to the extent it matters, Mayo is operating all of these schools, and again, all of these things are extricably intertwined. They're paying tens of millions of dollars in furtherance of education. So the idea that somehow Mayo has an incidentally educational function is absolutely not supported by this record. Thank you, Ms. Henning. Ms. Hagley, your rebuttal. Yes, thank you. I actually just had two main points that I wanted to make. One, that Mayo has no response to the fact that educational organization has a well-understood and settled meaning as used in Section 170, based on decades and decades of Treasury's interpretation. Congress has never disturbed and has actually relied on. Second, to the point of incidental, the government did argue below that Mayo's educational activities over two of its schools were only an incidental function of Mayo's broader organization's activities. We made this on Mayo's appendix, page 131, and the IRS had made the same determination when it audited Mayo, and that's in the government's appendix on page 226. The government relied on both qualitative and quantitative evidence to support that. You're asked about the record sites for percentages. I invite the court to look on page 21 of the government's opening brief, where we've set out sites that support how Mayo, on its own tax returns, broke down its patient care versus educational expenses, such that in recent years, its total revenue for educational revenue, Mayo's own evidence, was 2%. Can I clarify one thing, counsel? Is the government arguing the statute's unambiguous? Our primary argument is that the statute is unambiguous, if you consider the text and full context of the statute, including Treasury's decades-old definition, similar to how the Supreme Court analyzed the statute in the Luce case. So then this is not a Chevron deference case? It's not. Our alternative argument is that the court agrees with the district court that the statute is ambiguous, that Treasury's 60-year-old regulation is reasonable and should be deferred to. But at a minimum, the court does need to I seem out of time. Thank you so much. Unless the court has any further questions, the government rests on its brief and asks that the district court's decision be vacated in reverse. All right. I don't see any other questions. So thank you, counsel, both of you for your providing argument to the court this morning in our virtual forum. We appreciate also the briefing that's been submitted in this case. It's a fascinating and potentially very difficult issue, but we appreciate your help with it. We'll take the case under advisement and render a decision as promptly as possible. Thank you both.